**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02612-CMA
(Criminal Action No. 07-cr-00172-CMA-6)

UNITED STATES OF AMERICA,

   Plaintiff,

v.

BREVELLE CROCKETT,

   Defendant/Movant.

---

## ORDER DENYING § 2255 HABEAS PETITION

---

This matter is before the Court on Petitioner Brevelle Crockett's *pro se* Motion to Vacate His Sentence pursuant to § 28 U.S.C. § 2255 (Doc. # 1636). For the reasons stated below, this Court denies the motion.

### I. BACKGROUND

In April of 2007, a 102-count indictment was returned against Mr. Crockett and 23 co-defendants, detailing all of the defendants' participation in a wide-ranging conspiracy to distribute mainly crack and powder cocaine. Thereafter, in July of 2007, a 113-count superseding indictment was returned, which comprised many of the same allegations. (Doc. ## 1; 372)

In January 2008, two separate motions to suppress electronic surveillance evidence were filed by co-defendants of Mr. Crockett. Mr. Crockett joined in those motions but both were denied by the Court. (Doc. ## 486, 614, 819, 864, 866).

On June 7, 2008, Crockett filed another Motion to Suppress. His motion was denied as moot, however, at a motion hearing held on June 18, 2008, after he filed a Notice of Disposition and a Statement in Advance of Plea of Guilty. (Doc. ## 1111; 1156; 1157; 1160.)

Thereafter, on June 25, 2008, Crockett pled guilty to Count 100 of the Superseding Indictment by admitting that he knowingly possessed with intent to distribute more than 500 grams of a substance and mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. He also confessed to the forfeiture allegation contained in Count 102 of the Superseding Indictment. (Doc. ## 1175; 1180; 1181). In exchange for his guilty plea, the government dismissed all remaining charges against him. (Doc. # 1363; 1367.)

This Court conducted a change of plea hearing to determine whether Mr. Crockett was entering his plea in accord with protections afforded criminal defendants under the Constitution. At the hearing, Mr. Crockett stated he was "satisfied with the counsel, representation, and advice" of his counsel and had no "complaints about his [counsel's] work for [him]." (Doc. # 1647, at 21). Crockett further notified the Court that he had discussed with his counsel: (1) whether or not he should enter a guilty plea; (2) his right to go to trial as well as other constitutional rights; (3) his plea bargain; and the nature and elements of the crime. (*Id.* at 21-22.)

The Court then explained to Mr. Crockett that he could be sentenced to a term of imprisonment of up to 40 years but no less than 5 years, and that at sentencing it would consider the Pre-Sentence Investigation Report ("PSR") and the sentencing guidelines in order to determine an appropriate sentence. The Court noted that Mr. Crockett's

guideline range "could be as high as 210 to 262 months" and as low as "37 to 46 months," but that, regardless of the final determination, the guideline range was not "binding on the Court," and the Court could impose any sentence it found to be reasonable as long as it was within the "statutory maximum" sentence of 40 years. (*Id.* at 24-28.) Mr. Crockett acknowledged that this sentencing regime would apply to his case. (*Id.* at 24-25).

Next, the Court asked the government to summarize what its evidence would be if Crockett were to proceed to trial. The government responded as follows:

> [T]he defendant engaged in a pattern of acquiring kilogram quantities of cocaine, converting kilogram quantities into crack cocaine, and then distributing those quantities of crack cocaine over a period of time.
>
> [T]he defendant conspired with Courtney McCoy, Rusty Martinez, and other persons both known and unknown to the Government to distribute and to possess with the intent to distribute cocaine and crack cocaine. And specifically, the Government contends that the evidence would show that during this conspiracy, that [Mr. Crockett] was a member and involved with the possession and distribution of more than 5 kilograms of cocaine and more than 4.5 kilograms of crack cocaine.
>
> In furtherance of the conspiracy, the evidence would show that [Mr. Crockett] purchased cocaine from Courtney McCoy, the transactions starting with 4 ½ ounces of crack cocaine in 2004, and moving eventually up to kilos of powder cocaine.
>
> The evidence would also show that [Mr. Crockett] purchased an average of 1 to 2 kilos of cocaine per week from Rusty Martinez in 2006. The evidence also showed that in furtherance of the conspiracy, that [Mr. Crockett] directed a taxi driver to take him to deliveries on several occasions, and this was observed by [police] surveillance.
>
> [I]ntercepted communications [between the co-conspirators] showed that [Mr. Crockett] depended on the taxi driver, identified as Weldon Pleas[,] to take him to these transactions. When [Mr. Crockett] was arrested, investigators also found 11 ounces of crack cocaine at the residence where he was arrested.

> There were communications that were intercepted in conjunction with the wiretap investigation in which Mr. Crockett . . . spoke with Courtney McCoy. On one such occasion, on May 25[,] 2006, agents intercepted Courtney McCoy and [Mr. Crockett] discussing the cooking of crack cocaine, the problems that Mr. Crockett was having cooking up that crack cocaine, and following that Mr. McCoy would come over and assist him in basically fixing this problem.
>
> The defendant also obtained his cocaine supplies from Rusty Martinez. And as to the specific count to which he's pleaded guilty in this case, [on] January 29, 2007, agents intercepted a telephone call between Rusty Martinez, one of his sources, who agreed to sell [Mr. Crockett] 1 kilogram of cocaine for $16,000. Then agents intercepted a call in which Rusty Martinez directed an unknown male to sell to [Mr. Crockett] his kilo and collect the money from him. Following that phone call, surveillance observed [Mr. Crockett] arrive at the arranged address discussed on the phone to complete the transaction. He arrived at the meeting in a taxicab. After the meeting [Mr. Crockett] returned to the cab and went into the trunk. Shortly thereafter, surveillance conducted a traffic stop of the taxicab and discovered approximately 1 kilogram of cocaine in the car. They also found a handgun in the cab. The gun was under the front seat of the cab, and [Mr. Crockett] was sitting in the back seat of the cab. The cocaine was located inside a coat that was found in the trunk.
>
> And the driver of the cab stated at the time that the handgun belonged to him. The cocaine was sent to a lab for a number of tests. Authorized lab found that in fact the substance that was seized from the cab was cocaine and was in excess of 500 grams. And in addition, the forensic investigator acquired a latent print from the gray duct tape in which the kilogram of cocaine was wrapped, and a latent fingerprint matching the left middle finger of [Mr. Crockett] was found.
>
> In addition, there were calls that were intercepted by agents after the stop occurred between [Mr. Crockett] and Rusty Martinez discussing the seizure of the cocaine.

(*Id.* at 41-44.)

The Court then asked Mr. Crockett if he disagreed with the government's description of the evidence it would admit against him. In turn, Mr. Crockett responded that he did not know Mr. McCoy, a co-conspirator, in 2004, but only first met him in 2006. Mr. Crocket further clarified that he disagreed with what the other defendants had

4

alleged about the amount of drugs Mr. Crockett had helped to distribute, suggesting that instead of cocaine he sometimes purchased only marijuana from other co-conspirators. Neither of these disagreements would substantively have impacted the charge to which Mr. Crockett pleaded guilty. (*Id.* at 53-54.) Further, when the Court asked Mr. Crockett if he was "pleading guilty freely and voluntarily because [he] was guilty of [the] crime and for no other reason," Mr. Crockett responded "Yes." (*Id.* at 54.)

Prior to sentencing, the probation officer prepared a PSR, which calculated Mr. Crockett's base offense level at 38. (Doc. # 1638). Noting that the Court could subtract two points if it found the "safety valve" provision applicable and that three more points should be subtracted for timely acceptance of responsibility, the PSR calculated the contingent total offense level at 33. With Crockett's criminal history category I, the PSR noted that the advisory Guideline range was 135 to 168 months. (*Id.* at 13-15, 20.) Neither Crockett nor the Government objected to the PSR or any of its contents. (Doc. # 1648).

At sentencing, the Court determined that Mr. Crockett's base offense level was 38. The Court then applied a two-level "safety valve" decrease and a three-level decrease for timely acceptance of responsibility, yielding a total offense level of 33. (Doc. # 1488, at 18-19.) With his criminal history category of I, Crockett's advisory Guideline range was 135 to 168 months. *Id.* at 19. In the absence of any downward departure request or motion for variance, after consideration of sentencing factors pursuant to 18 U.S.C. § 3553(a), the court sentenced Crockett to 135 months' imprisonment. (*Id.* at 4, 19.)

## II. **DISCUSSION**

### A. STANDARD OF REVIEW FOR A 2255 PETITION

Mr. Crockett, invoking 28 U.S.C. § 2255, advances a number of challenges to the sentence he received for his role in the drug conspiracy. Pursuant to 28 U.S.C. § 2255(b), Mr. Crockett is entitled to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." Here, Mr. Crockett alleges that the denial of his constitutional rights arises from the fact that his attorney provided constitutionally deficient assistance during the plea and sentencing phases of his criminal proceedings.

The Supreme Court has held that the two-prong "*Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel" brought pursuant to 28 U.S.C. § 2255 motions. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). The first prong requires a defendant to show that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). The second prong requires that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.

Under the first prong of *Strickland*, the reasonableness standard is strongly tilted towards the presumption that counsel's conduct is within a wide range of effective assistance. *Id.* at 689. Otherwise, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535

6

U.S. 685, 702 (2002). Thus, the movant's ineffective assistance of counsel claim is reviewed from the perspective of her counsel at the time she rendered her legal services, not in hindsight. *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998) (citing *Strickland*, 466 U.S. at 689). The prejudice standard (*i.e.*, the second prong) requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 703. The *Strickland* test is conjunctive, so "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

As to the first prong of the *Strickland* test, because Mr. Crockett makes an "ineffectiveness claim on a counseled guilty plea," he must "identify particular acts and omissions of counsel tending to prove that counsel's advice was not within the wide range of professional competence." *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991) (internal citations and quotation marks omitted).

As to the second prong of the *Strickland* test, the Supreme Court recently addressed ineffective assistance of counsel claims in the guilty plea context in *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *see also Lafler*, 132 S. Ct. 1376. "The more general test set forth in *Frye* is whether the defendant can 'show a reasonable probability that the end result of the criminal process would have been more favorable' to the defendant in the absence of counsel's deficiencies. [At the same time, t]he [*Frye*] Court reaffirmed [prior precedent] in saying that when 'a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have

7

to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (quoting *Frye,* 132 S. Ct. at 1409).

Finally, this Court notes that in considering Mr. Crockett's claims it must consider whether they are substantiated by specific facts he can point to that give rise to a Strickland claim. By the same token, "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Moya*, 676 F.3d at 1213 (citing *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir.1994).

## B.    CROCKETT'S CLAIMS

### 1. Organizing Mr. Crockett's Claims

Mr. Crockett's claims for relief are contained in two documents: his petition for a writ of habeas corpus  (Doc. # 1636, hereinafter "*Motion*") and an accompanying memorandum in support of the habeas petition.  (Doc. # 1636, hereinafter "*Memo*") These two lengthy documents, which together comprise more than fifty pages of briefing, advance a number of overlapping claims as to why Mr. Crockett received ineffective assistance of counsel in pleading guilty, which resulted in an overly long sentence, in violation of his constitutional rights.

This Court notes at the outset that although it must construe Mr. Crockett's *pro se* pleadings liberally,[1] determining the scope and precise character of many of Mr. Crockett's claims is difficult.  The claims alleged in the petition and the ones referenced

---

[1] The Court must construe all Mr. Crockett's pleadings liberally because he is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers"). At the same time, the Court cannot act as an advocate for a *pro se* litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (noting that a *pro se* litigant must make more than conclusory allegations to state a valid claim).

in the memorandum do not always match. Moreover, certain grounds or arguments for relief alleged in one document do not appear in the other.

The government, in its response to Mr. Crockett's motion, characterized Mr. Crockett as raising five claims. (Doc. # 1663, at 9.) In Mr. Crockett's Reply to the Government's Response (Doc. # 1668), Mr. Crockett appears to agree with the organizational principles adopted by the government in characterizing his claims. Further, the Court agrees with the parties that this is a proper manner to organize Mr. Crockett's claims. It will address each of Mr. Crockett's five claims in the same order as the government. These claims include the following:

> 1. Mr. Crockett's counsel "did not seriously investigate, explore, or attempt to negotiate a favorable plea" under Rule 11(c)(1)(C), by stipulating to a sentence of four years – a sentence that he was, according to Mr. Crockett, apparently promised by his attorney. Further, Mr. Crockett's attorney did not "seriously investigate, explore, or attempt to negotiate" a conditional plea under Rule 11(a)(2), "which would have allowed [him] to appeal the denial of his motions to suppress" (*Motion* at 12-13; *Memo* at 16-25).
>
> 2. Mr. Crockett's counsel did not advise him to proceed with a bench trial on stipulated facts, and therefore, his "decision to plead guilty was not a voluntary and intelligent choice among the alternative courses of action open to him" (*Motion* at 13-16; *Memo* at 26-32).
>
> 3. Mr. Crockett's counsel failed to "effectively 'flesh out'" the motions to suppress, which he joined, to include the fact that there was "strong evidence" that the wiretaps were unlawful, and as a result, "'fruit of the poisonous tree' evidence from [the] wiretaps was used against [him]" (*Motion* at 17).
>
> 4. Mr. Crockett's "counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, plea, sentencing and direct appeal" (*Motion* at 17-18).
>
> 5. Mr. Crockett was "prejudiced by the cumulative impact of the multiple deficiencies and errors" of his counsel. (*Memo* at 33-34).

The Court addresses in turn below its reasons for denying each of Mr. Crockett's habeas claims.[2]

    2. <u>Application</u>

        *a) Claim 1: Ineffective Assistance in Obtaining a Favorable Plea Bargain*

First, Mr. Crockett alleges that his attorney was ineffective because he did not negotiate with the government for a four-year sentence or for a conditional guilty plea that would have allowed Mr. Crockett to contest the adverse rulings on his suppression motions on appeal. Mr. Crockett's position here is undermined in part by the fact that during his change of plea hearing he acknowledged that a five-year mandatory minimum could apply to his sentence and that the applicable sentencing range for the crime he was pleading guilty to was well in excess of four years' incarceration.

The fatal flaw with his position, however, is that fails to "identify particular acts and omissions of counsel tending to prove that counsel's advice was not within the wide range of professional competence." *Moore v. United States*, 950 F.2d at 660. Indeed, Mr. Crockett broadly suggests the hypothetical possibility that he could have received a better plea deal, such as one prescribing a shorter sentence or one that allowed him to appeal certain claims, but he provides this Court with no factual development that would turn this hypothesis into anything approaching a real plea option. For example, Mr. Crockett points to no evidence that this Court had accepted similar types of plea deals

---

[2] As noted above, Mr. Crockett broadly alleges further violations of his constitutional rights in other portions of his briefing: for example, he alleges in one subject heading that his conviction and sentence are "violative of his right to freedom of speech." (Doc.## 1663, at 6; 1668, at 6), and he alleges that the charging document was somehow defective because a "'complaint' was [n[]ever filed in his case. (*Id.* at 14.) But these types of allegations of constitutional violations, while they appear in the scattered sections of the briefing, are not further substantiated or described, such that this Court cannot consider them, even if liberally construed. Indeed, as to the defective indictment theory, Mr. Crockett appears to be operating under a misapprehension of the law regarding criminal indictments or alternatively provides no legal support for what this Court finds to be a wholly novel attack on a charging document.

in the past, that the government had entertained such deals under similar facts, or that absent such a form of plea deal Mr. Crockett would have taken his chances in presenting his claims at trial.

Because of the lack of factual support for this claim, it therefore fails. *Cf. Moya*, 676 F.3d at 1214 (denying an application for a Certificate of Appealability for a petitioner who had alleged that his attorney could have negotiated a plea agreement allowing him to appeal the denial of a suppression motion on the ground that the petitioner had alleged no facts suggesting the attorney could have successfully negotiated such a deal).

### b) Failure To Advise of the Possibility of a Bench Trial

Next, Mr. Crockett faults his attorney for failing to advise him that he might have had the opportunity to proceed with a bench trial on stipulated facts. His argument here is premised on the fact that he could have executed this strategy without losing a reduction in his sentence for acceptance of responsibility.

This argument fails because of a number of flaws in the premises of Mr. Crockett's argument. First, Mr. Crockett has not established that it was probable that the government would have consented to a bench trial, as opposed to a jury trial. Indeed, absent those rare circumstances where "passion, prejudice, [or] public feeling" would undermine the impartiality of a trial by jury, a criminal defendant must obtain the consent of the government in proceeding with a bench trial. *Singer v. United States*, 380 U.S. 24, 37-38 (1965). Mr. Crockett has not established how such an exception would apply here or why the government would have otherwise consented to a bench trial.

Second, Mr. Crockett has not established that proceeding with a bench trial would have allowed him to preserve his entitlement to a reduction in sentence for acceptance of responsibility under USSG § 3E1.1. Indeed, Mr. Crockett seems to suggest that any time a defendant has a Constitutional claim that would allow him to suppress evidence and then proceeds to the trial on the merits, he is entitled to still receive a sentence reduction for acceptance of responsibility. Yet he fails to provide any authority in which another court has adopted this interpretation of the sentencing guidelines.

Further, Mr. Crockett's position here appears to be in tension with another portion of the notes accompanying § 3E1.1, which provides that the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, application note 2.

Finally, this Court's review of the relevant case law reveals that such a strategy is successfully employed only, to invoke the words of the Sentencing Guidelines in "rare" situations, not applicable here. USSG § 3E1.1 cmt. (n.2); *see also, e.g.*, *United States v. Alvarez*, 731 F.3d 1101, 1105 (10th Cir. 2013) (collecting cases where this "rare" exception has obtained and the more numerous cases where a district court's decision to invoke this exception has been reversed on appeal); *United States v. Gonzalez*, 70 F.3d 1236, 1238–40 (11th Cir.1995) (denying a reduction for acceptance of responsibility denied where the defendant challenged the admissibility of evidence and pursued a bench trial instead of a guilty plea and reasoning that "[b]y challenging the

12

admissibility of the essential evidence against him, [the defendant] attempted to avoid a determination of factual guilt and to thereby escape responsibility for his crime.").[3]

Thus, for all the reasons cited above, Mr. Crockett has not established that his attorney's failure to pursue this option was somehow deficient.

### c) Claims Three and Four: Suppression Motions and Conflict of Interest

Next, Mr. Crockett alleges that his attorney failed to effectively "flesh out" the substance of the aforementioned motions to suppress and that his attorney labored under an actual conflict of interest. Neither of these claims has merit.

As to the suppression theory, when an ineffective assistance of counsel claim is based upon defense counsel's failure to litigate a Fourth Amendment issue, the defendant must prove that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Mr. Crockett has provided this Court with no such evidence in support of such a position on his suppression motions and the claim therefore fails for want of sufficient development of the legal argument.

As to the conflict of interest theory, an actual conflict giving rise to a valid *Strickland* claim is shown when "the attorney has an interest in the outcome of the

---

[3] Mr. Crockett cites *United States v. Villasenor-Cesar*, 114 F.3d 970, 976 (9th Cir. 1997), *United States v. Rogers*, 129 F.3d 76, 80 (2d Cir. 1997), and *United States v. Ryan*, 964 F. Supp. 526, 528 (D. Mass. 1997), as supportive of his position that he can proceed to a bench trial and preserve his acceptance of responsibility reduction. *See Motion* at 14. This reliance is misplaced. In *Villasenor-Cesar* and *Rogers*, appeals courts in fact affirmed the denial of sentencing reductions for acceptance of responsibility. Further, in *Ryan*, while the defendant did proceed with a bench trial, he raised double jeopardy claims related to a prior prosecution and seemingly convinced the government to agree to the acceptance of responsibility reduction. Mr. Crockett cites to no cases where a defendant has proceeded to a bench trial on stipulated facts as a means of challenging a suppression motion and nevertheless obtained a reduction in sentence for acceptance of responsibility.

particular case at issue that is adverse to that of the defendant." *Hale v. Gibson*, 227 F.3d 1298, 1312 (10th Cir. 2000).  For example, such a conflict arises "if counsel was forced to make choices advancing interests to the detriment of his client," *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003) (internal punctuation omitted), or "if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others," *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir.1990).

Mr. Crockett has not met this standard.  Indeed, aside from the conclusory allegations that such a conflict existed, this Court is at a loss as to the nature of the conflict, how it served to Mr. Crockett's detriment, or even which of Mr. Crockett's many attorneys suffered from the conflict of interest.  Absent further legal and factual support for this claim, then, the Court again will not entertain this theory in support of an effective assistance of counsel claim.

### d) Claim 5: Cumulative Error

Finally, Mr. Crockett alleges cumulative error.  "A cumulative-error analysis aggregates all errors found to be harmless and 'analyzes whether their cumulative effect on the outcome . . . is such that collectively they can no longer be determined to be harmless.'"  *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002).  Because the Court finds that Mr. Crockett has insufficiently alleged *any* error here, this Court also finds that there is also no cumulative error.

### III. CONCLUSION

Based on the foregoing, Mr. Crockett's 28 U.S.C. § 2255 Motion to Vacate His Sentence (Doc. # 1636) is DENIED.  It is FURTHER ORDERED that Mr. Crockett's

motions for Leave to File Excess Pages (Doc. #1635), for Discovery (Doc. #1669), and for Clarification ((Doc. #1698) are DENIED AS MOOT in light of this order.  It is FURTHER ORDERED that pursuant to 28 U.S.C. § 2253(c), no certificate of appealability will issue.

DATED:  December 31, 2013

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge